Good morning, Your Honor. May it please the Court. How much time do I have for this argument? Ten minutes. Ten minutes. So I guess I'd like to just reserve two minutes then, if I may. This case basically involves perhaps three separate parts. The first part is whether or not Mr. Villalobos should be entitled to some relief, because during the 1987 application period under the Immigration Reform and Control Act Can I ask a factual, historical question? Please. Maybe Judge Hawkins would know, since he was one of the two judges who appointed, directed that pro bono counsel be appointed so that Mr. Villalobos could take advantage of the settlement where he could have refiled on a timely basis. That wasn't done. So now what I see as being argued is that notwithstanding not having come under that, you're essentially trying to construe subsection C, amendment by Congress, as creating an affirmative right to file basically, even though there hasn't been an application actually received by INS DHS. There's nothing before them. There's nothing in their files, presumably. So it's not in that sense pending. I guess there are two answers to your question. One is under the, firstly, I guess this whole issue about his eligibility under CSS only came about because somebody here at the Ninth Circuit was reading the transcript of the deportation hearing and saw that he said something about that he had attempted to apply for legalization and that's when they appointed pro bono counsel to look into it. So that's how it came up. There are two ways in which he has applied. Firstly he didn't apply within the, you know, that was in September 2005, the statute or the settlement statute ran in December. He didn't file. He didn't apply under the settlements, but he did apply in two other ways. He, under the Supreme Court decision in Reno, the Supreme Court said that when a person tendered a complete application and a filing fee timely during the May 87 to May 88 application period, that that was deemed, that should be deemed to be an actual application and all that's left, even though the government turned it away, all that's left, of course, the Supreme Court didn't really dot the I's and cross the T's and explain how you would do this, but the Supreme Court very clearly said that if a person tendered a complete application and a filing fee during the application period, that that person certainly filed and they sort of left, they said that in a pretty black and white way, that person certainly filed and all that's left is for the agency to re-adjudicate the application. Now, of course, they didn't dot the I's and cross the T's because the application had been rejected, so you would have to somehow resubmit the application in order to, for the agency to adjudicate it. But that much is clear. I mean, that language in the Supreme Court is very, very clear, and the Supreme Court sort of then bases its whole jurisdictional analysis on the idea that somebody who tended, like this guy, somebody who tended a complete application and a filing fee during the application period did file his application. Now, the second way, once it came to our attention, because this, the Ninth Circuit, somebody here saw this business that this guy said, I've applied during the application period and I was turned away. So when the case came to our attention, which... But we watch all these cases carefully. Yeah. Yeah. Very, very, very carefully. Why wasn't, why wasn't filed on time after, after counsel was appointed? Well, counsel was not appointed, at least I didn't get involved, until after the application period under the settlements had concluded. And so what we did was believing that he has an independent right to seek an adjudication of his application, independent of the settlement. Again, and for the reasons we've explained in our briefs, that nowhere in the settlements, and we structured the settlements. I mean, we were the close counsel, so we were the ones writing the settlements. Yeah. Nowhere in the settlements do they ever override or supersede the person's basic rights under 1255A. And so the settlements are simply a quick and easy way, because normally, just like this gentleman, normally to get judicial review of any matter pertaining to your legalization, the only way you would get that judicial review is by going to a deportation hearing, being found deportable, then going to the Board of Immigration Appeals, again, being found deportable, and eventually make your way up to a court of appeals, and that's where you could finally get some sort of review of your legalization application. There was no final order here. And here there is a final order of deportation, both by the immigration judge and by the Board of Immigration Appeals. And so the settlements are really a way for people to bypass that. It's a way for people to get immediate relief under 1255A without having to go through all those two or three years of administrative steps in order to bring their application to the forefront. So my point is just that there's absolutely nothing in the settlements that would abrogate or supersede what Mr. Hernandez's rights are under the statute and certainly not to his judicial review. And under the Supreme Court approach in Reno, his application has effectively been sitting there and has just been pending since 1987, 1988. And again, as the Supreme Court said, once you attended that application with a complete filing fee, you have in effect filed that application. And in the language of the Supreme Court, all that remains is for the agency to adjudicate that application. What we did once this case came to our attention, and it was in the mediation program of the Ninth Circuit, and there were strong efforts both by us and by counsel for the government to resolve this case. And so with the agreement of everybody, we actually submitted a very complete application and counsel for the government then submitted it to the U.S.CIS, but they clearly did not want to deal with it. And that's why we're back in front of you on this issue. So in effect, I think he's had two complete applications. One complete application that was made back in 1987, and then again, in essence, we sent them a complete application, whatever it was, maybe eight months ago, but we've attached a copy of that as Exhibit 1. So in essence they didn't take it once again. No, they didn't. They preferred to have this Court decide how to handle the matter. So just to boil it down as I understand it, what you're saying is that there's an application constructively pending, that's actually not there, but for the Reno decision, you're saying that it was constructively filed then, it's been pending ever since, even though it's physically not there. There's no record, there's no actual decision. Exactly. Under this later passed section, 1255AF4C, the Court would have jurisdiction to review the application because the attempt was made to file a complete application and filing fee with an authorized legalization officer, but the application and fee were refused. Exactly. And that language that Congress came up with was more recent than the... That was directed, wasn't it, to get rid of the... to make clear that the folks who had neither actually filed or the front deskers such as your client did not extend as far as people who had never taken any effort because they thought it was futile or whatever. That's what the language was put in there for. Exactly. If I might reserve a minute, I see I'm down about 45 seconds here, but exactly, I mean, I think that what Congress wanted to... what Congress was really saying, because there were other people... I'm trying to understand why you think that gave an affirmative grant of jurisdiction for our court to then step in and say, we have jurisdiction to review the front desk type of things that haven't been acted on when there wasn't a reapplication. I think that it adds to the language that indicates that this Court would have jurisdiction, and what Congress was trying to do was to say, we don't think the Court's... because they stated it in the negative. They basically said, if you don't have... there is no jurisdiction unless A, B, and C. What they were trying to do was to say that, because there were other folks who said, I went down there and I just inquired, but I did not have a complete application in my hand, or I went down there and I... I understand with that third category, the constructive filing. Exactly. And I think what Congress was trying to do was to draw a circle around who might get judicial protection, and Congress chose to draw that circle around sort of the, quote, the true front desker, the person who actually tried to file, had a complete application. He's under a final order of removal now. He is. And so he's entitled to have that denial reviewed. We believe so, and if not, I mean... By this Court. We believe so, and if not, it in essence means that we will be deporting a guy who appears to qualify under the statute for legalization. He made every effort. He played by the rules. He made every effort to apply during the 87-88 application period. He was turned away based upon a, quote, travel rule, unquote. I think we understand that. It's just he didn't make the effort to file under the settlement. And he didn't do that, as we understand it, and I believe this is in his declaration that we submitted with his application to CIS that they chose not to adjudicate. But he simply didn't know about it. He had no idea. I would assume there are several thousand people out there because the government, the INS, the former INS, did not keep any records about who had turned away. So when we finally settled this class action, we were not able to send direct notice to people to say you got turned away and, you know, you've really got 60 days to hour, 90 days to act on your rights. We were only able to do the most general kind of, the INS put out a press release. We sent out notice under the terms of the settlement. We sent out notice to some community-based organizations. But the reality is that the chances that somebody would actually get notice of that settlement was not extraordinarily high. If one really digs into this, one would see that early on in this litigation, both the court in this and the county. I'm not sure we need to go into all of that. The thing that I know that a motions panel of this court directed because there was this opportunity directed that counsel be appointed for the specific purpose of processing a reapplication under the settlement, assuming that I don't know whether the pro bono counsel was appointed in time. I don't know anything. I just know that that was the thrust of the order. I doubt it because I know the application period ended December. If you don't know, there's nothing. Yeah, December. And I just know that we only, we got involved subsequent to that date so that by the time we got involved, we couldn't. Had we been able to, we certainly, we would have told him, here's the settlement, there's still a month left to do it. But by the time we got involved, the settlement period was over. And when we questioned him, he knew absolutely nothing about that settlement period. But once again, I would just say, you know, I noticed that we, I don't believe we filed the settlement with you. So if you would like us to, I could certainly cause the actual, it's also available on the Internet at the CIS website. But I could, if it would be helpful, I could certainly also cause the actual terms of the settlement to be filed with the court. But again, the bottom line for us is just that there was absolutely nothing in the terms of the settlement that sought to abrogate the rights of class members to say this. Do you have order approving settlement of class action? Is that what you? I'm sorry, Your Honor? The order approving settlement of class action filed January 2004. Yeah. We have that. You do have that. Okay. And then do you actually have the settlement, the terms of the settlement? I'm just not sure. Whatever. That's what I have. Okay. It's called joint stipulation regarding settlement. Well, why don't you give us a copy? Okay. We'll just get it filed in the next. It's free of charge, right? Yeah, it's free of charge. We'll do that as pro bono counsel. Well, thank you, Your Honor. I mean, I think my time is more than enough. So thank you so much. All right. If it may please the Court, Anthony Payne on behalf of the Acting Attorney General. The question before the Court is not the relief that's available for Mr. Hernandez Villalobos. The question, rather, is whether or not the Court has jurisdiction over his front desking. The Supreme Court answered this question explicitly in Reno v. CSS. Initially, the Supreme Court found that jurisdiction, judicial jurisdiction, and administrative jurisdiction is subject to 1255A-F.  The Supreme Court then went on to find that in order for 1255A-F to apply, there must be a determination made. And a determination is a formal denial of an application. Well, what about when Congress later passed, after the Reno case, passed 8 U.S.C. 1255A-F-4C? Yes, Your Honor. That tells us we don't have jurisdiction to review these IRCA applications unless the person attempted to, et cetera, et cetera, which happened here. So, ergo, why don't we have jurisdiction? Well, Your Honor, as Judge Fischer pointed out, that amendment was specifically an attempt by Congress to limit jurisdiction, not to grant further jurisdiction. Well, but, you know, if you just, we're supposed to look at the language of the statute, right? Well, this Court has found in Zambrano v. INS that 377A purports to divest district court jurisdiction relating to legalization claims. That's true as to constructive filers, which is what the intent was of the amendment. But it does speak specifically about either actually filed or attempted to be filed. That's what the, that's inclusive. In other words, it's saying district courts don't have jurisdiction over people who made no attempt. But it does imply, in its plain language, that the courts have some kind of jurisdiction over actually filed or attempted to be filed. So what's the category there? Yes, Your Honor. That would mean the district court has jurisdiction over those claims. But read with conjunction with the rest of the statute, the court of appeals does not have jurisdiction because you do not have a formal determination. Well, under the current, I mean, what happened to the, the district courts don't have jurisdiction anymore over any of these claims, do they? I mean, aren't the, so what was their remedy? To go into district court rather than file in this court? And if they'd gone to district court, they could have treated this as a pending application and Yes, Your Honor. So that was their remedy. Yes, Your Honor. It's the government's position. How would they know that? Well, by the, the settlement was still going on at the time. And by the language of the statute. If they had applied, if they had sought further review from DHS, presumably DHS would not have sought, would not have provided administrative review at that point because DHS was operating under this assumption or INS at the time. So Hernandez Villalobos was supposed to figure all that out? Well, yes, Your Honor. And with counsel. Counsel was supposed to figure it out? Yes, Your Honor. Now, Congress certainly could have been clearer. Let me, let me ask you, just so I'm sure we're talking about the same thing. If in, before December 2005, Villalobos had filed a reapplication, he would then have been in the process, we wouldn't be here, correct? Right, through the settlement agreement. Because there was that window of opportunity. Right. For whatever reason, Villalobos did not file, but the Supreme Court does say that to the extent that there was an attempt to file and a construct, in that sense, it wasn't somebody just saying, I'm discouraged or I'm whatever out there, which is what C was designed to make sure was not part of it. Congress, in the terms of subsection C, contemplates, and you have agreed, that someone who had attempted to actually file and had been rejected had, in that sense, constructively filed. The application was there. Right? So you're saying, as I understand it, that under subsection C, Congress recognized that there was jurisdiction for judicial review, even though the INS at that time had no physical possession of an application because they rejected it, and, therefore, there was no actual decision as to. Well, I. And there was no administrative record. But they implicitly, explicitly recognized that there is, that they are not excluding federal court jurisdiction over either an actual filing or a constructively filed one that was rejected. You've responded, yes, there was judicial review contemplated by that, but it's not in this court. So post-December 2005, what should Villalobos have done when he got counsel who said, okay, here's the situation. You didn't meet the settlement deadline, but we still have a right to do what? Well, unfortunately, I believe the statute does not provide him means to do anything. No. Because he would be out of time. So it's not. It's an untimely because. Right. Even though it was constructively filed within the time because he didn't reapply, somehow he doesn't have any rights anymore. I believe that would be the determination. Your position. Go ahead. No, I'm sorry. The government's position is because there's been no final determination, we have no authority, no jurisdiction to review that. Yes, Your Honor. That's what the Supreme Court decision provides. And this Court found as such, and I believe it's CSS7. There's so many that I'm not quite sure which number it is. Do we have the authority to stay removal pending the processing of this application? Well, you do have jurisdiction over the removal order itself. So in conjunction with that, certainly. Would the government object to our staying our consideration of this matter while this application is processed? I would have to check with the client, Your Honor. Was that discussed in mediation? I'm not privy to all the. You didn't participate. Yes, Your Honor. Well, isn't that the sort of logical way to handle this case? Well, I believe that the application would now be out of time, Your Honor. So it would take something beyond just the mere following of the application for it to be adjudicated. I mean, you think we have to wait for some opinion from the Justice Department? If we decide now we're going to grant a stay? Certainly. But I cannot speak for what the government's position would be with respect to the stay without checking with the client first. We understand that. I didn't get sort of to the end of my question. And that is, if we stayed and if there was an application, even if the agency denied the application as untimely, that would be a determination that we could review. Yes, but then he would be subject to the provisions of 1255AF, I believe it's C, Your Honor, AF4C, which says there's no review of an untimely, an application which is denied as untimely. Okay. If I may address the other claims raised by Petitioner in his brace. But, I mean, how can it be untimely if there was constructive filing? Well, there is. Did you go back to that date? That would have to be something that the government, that DHS decides. But there is no such application. Are we, is DHS to consider the application that was just prepared? That's certainly not the application that was filed back in 1987. They could say it relates back. That would have to be. Given the benefit of the timely filing date and it's an updated application. That would have to be a determination. I understand DHS would have to decide that. But the court doesn't have jurisdiction to decide that because we have no such determination by DHS. This is all speculation as to what DHS would do. So it is the government's position that the current status of this case, the court lacks jurisdiction over both the legalization claim because there has been no determination and the Supreme Court was explicit in identifying the jurisdiction of the Court of Appeals. That is a formal denial of application, of a timely application. With respect to cancellation, the government also submits there's no jurisdiction because it's an extreme hardship determination. And with respect to the equal protection claim. That's another story. We haven't come to that story yet. That's true, Your Honor. You know, and you're making these arguments that these lawyers out there and these immigration matters, they have to understand all the windings and intricacies of the immigration code, right? You know, and yet you permit disbarred lawyers to practice. You permit notorious to practice. You permit a lot of crooked lawyers to practice. You know, I can give you a hundred-page document right now that lays all that out. So the government is implicit in all of this. So, you know, do you want to hold these people to a higher standard than the government ought to hold itself? Certainly, Your Honor. That's ridiculous. You know, this is a democracy. This is a free country, you know. This is liberty and justice for all, not we got you, you know. Certainly, Your Honor. I didn't read that because we let you get lawyers that, I'm not talking about all the lawyers, but there's a number of them out there that handle these day after day, eight, nine, ten applications a day. And the IJs know it. The BIA knows it. And all the people in Washington know it. Do you know it? Certainly, Your Honor. You know it, too. But there have been no allegations as such in this case. And if there were such allegations, this is not the form to raise it in the first instance. But then we don't have jurisdiction to raise anything according to you. That is correct, Your Honor. We're just here wasting the government's money and your travel expenses, right? Well, we are here to interpret the law as Congress wrote it. And Congress, for whatever reason, did not provide jurisdiction as the Supreme Court found it. We can read it, too, you know, under F4C. Yes. And if I may point out. I mean, whose job is it to interpret the law? The House Conference Report makes it clear that that provision was a limitation and this Court has found that it's a limitation. You know, we look at the plain language of the statute. You know, we're strict constructionists. Yes, you are. Do you want us to be activists? Is that what you're saying? Well, another panel of this Court has found that that provision divests the district court of jurisdiction. He's way over his time. Okay. Yeah. You're over your time. But we'll waive the excess. I have nothing further, Your Honor, unless you have a question. I might just have 10 seconds. Yeah, sure. Are you from Australia? I'm from South Africa originally. Yeah, they're close, you know. Yeah. But the accent's a little close. The ocean's kind of far. Magellan found that. Yeah. The only other point I wanted to make is that there is another hook to hang one's hat on in this case as well as that 1255A-F, and that is 1255A-E. And, again, just so that you're aware of this, 8 U.S.C. 1255A, and there's no parentheses around that A, and then small E, there is a parentheses around the small E. That, I mean, if the government was right and somehow this 20 years of not acting on the guy's case is not a denial and, therefore, somehow this Court cannot get involved, what 1255A-E says is that any person who has presented a prima facie application cannot be deported. And so it's separate from F, but you kind of can reach the same result in the sense that under 1255A-E, the government's not supposed to be deporting him until he gets a decision on his application. Unless they found that his application was not prima facie. If they found it was frivolous, they could certainly deport him. But that statute is very clear. It just says that if a person submits a prima facie application, he's not to be deported and he's supposed to be given a work permit. And so that is sort of yet another expression, a very plain expression by Congress, which makes sense, that they wouldn't want somebody who appears to be eligible for this important benefit to be deported before the benefit is really being thought through by the government. And these are not tough cases. I mean, if the government wanted to finally look at Mr. Villalobos's case, the truth is, they could probably decide it in less than an hour. I mean, these are not, it doesn't take a rocket scientist to figure these kinds. And so our suggestion on the balance of those claims, and I know they're all sort of separate because we've got the wife's claim about the cancellation and did the immigration judge consider everything and we've got the kid's claims and blah, blah, blah. I mean, somehow the court has to look at those issues. But if there's any way to reach a result where everything is basically backburnered until this guy's legalization is determined and then we can turn to the kids and the wife and so forth and so on, I just think that that would be kind of the logical and the fair way to proceed. They may then have some benefits to him. That's a long 10 seconds. Yeah, okay. I'm sorry. I'm out of here. Thank you very much. A long way to, okay. Great. Thank you. A long way to justice. All right. Thank you both. Thank you. All right, next. We'll take a break after this one. Okay.
judges: Pregerson, Hawkins, Fisher